## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

**BRUCE JONATHAN SMITH, individually and
on behalf of all others similarly situated,**

      **Plaintiff,**

                                              **CASE NO.**

**v.**

                                              **JURY TRIAL DEMANDED**

**MUTUAL OF OMAHA INSURANCE
COMPANY, MUTUAL OF OMAHA
INVESTOR SERVICES, INC, UNITED OF
OMAHA LIFE INSURANCE COMPANY, and
UNITED WORLD LIFE INSURANCE COMPANY**

      **Defendants.**

## CLASS ACTION COMPLAINT

Comes now the Plaintiff Bruce Jonathan Smith ("Plaintiff), individually and on behalf of all other similarly situated individuals and by Counsel, and files this Class Action Complaint alleging the following claims against Mutual of Omaha Insurance Company, Mutual of Omaha Investor Services, Inc., United of Omaha Life Insurance Company, and United World Life Insurance Company ("Mutual of Omaha" or "Defendants"):

### NATURE OF THE CASE

1.     Plaintiff brings this action against Defendants for violations of the Federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b)(3). The FCRA imposes several important procedural requirements on employers that use a background check, which are designed to protect consumers like Plaintiff.

2.      Defendant Mutual of Omaha operates a national insurance and financial-services business, and maintains offices throughout the United States. Mutual of Omaha uses consumers such as Plaintiff as insurance advisers or registered representatives to sell Mutual of Omaha's insurance and financial products to other consumers. As part of its hiring process, Mutual of Omaha uses consumer reports (commonly known as background checks) generated by non-party General Information Services, Inc. ("GIS") to make employment decisions. Because such employment decisions are based in whole or in part on the contents of the background checks, Defendants are obliged to adhere to certain requirements of the FCRA.

3.      When using criminal background reports for employment purposes, employers must, before declining, withdrawing, or terminating employment based in whole or in part on the contents of the report, provide job applicants like Plaintiff with a copy of their respective background reports as well as a written summary of their rights under the FCRA.

4.      Providing a copy of the criminal background report as well as a statement of consumer rights before making a final adverse employment decision arms the nation's millions of job applicants with the knowledge and information needed to challenge inaccurate, incomplete, and misleading public-records-based reports. The FCRA is designed to permit individuals whose reports are inaccurate with ample time to identify the inaccuracies and correct them before the employer has made an employment decision.

5.      Defendants are informed of the necessary rigors FCRA compliance imposes, as the facts alleged in this case have been the subject of extensive litigation against employers like Mutual of Omaha in other cases. Mutual of Omaha also has significant resources at its disposal that allows it to learn of and keep track of such decisions.

6.      Plaintiff brings a nationwide, class claim against Mutual of Omaha under 15 U.S.C. § 1681b(b)(3), because it failed to provide Plaintiff and other class members with a copy of their criminal-background report and a summary of FCRA rights before taking an adverse employment action against them.

## PARTIES

7.      Plaintiff Bruce Smith is a "consumer" as defined by 15 U.S.C. § 1681a.

8.      At the time of the allegations in this Complaint, Mr. Smith lived in Des Moines, Iowa, which is within the territorial confines of the Southern District of Iowa, Central Division.

9.      Defendants are for-profit corporations conducting business and hiring employees in the Central District of Iowa and throughout the United States. Defendants are also a "person" using "consumer reports" for "employment purposes" and take "adverse action" against "consumers," as those terms are defined by 15 U.S.C. § 1681a.

10.     Third-party General Information Services ("GIS") is a consumer reporting agency ("CRA") as defined and governed by the FCRA.

## JURISDICTION AND VENUE

11.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

12.     Venue is proper in the Central District of Iowa because Mutual of Omaha is subject to personal jurisdiction in this District and makes employment decisions regarding individuals residing in this District. 28 U.S.C. § 1391(c). Further, Plaintiff is a resident of this District and Division.

## GENERAL FACTUAL ALLEGATIONS

13.    In December 2015, Plaintiff Bruce Smith applied to contract with Mutual of Omaha to sell insurance products made available through Mutual of Omaha.

14.    Employment with Mutual of Omaha was contingent on successfully passing a background check.

15.    Plaintiff signed a document purporting to authorize Mutual of Omaha to obtain a consumer background report about him for employment purposes.

16.    On information and belief, Mutual of Omaha's procedure for processing a consumer's employment background check was as follows: (a) the consumer completes an application, which is sent electronically and automatically to GIS; (b) GIS completes that background check, grading some criminal records or information as "REVIEW" on the report; (c) either GIS or Mutual of Omaha reviews the report and determines whether the consumer is eligible for hire based upon the flagged criminal records; (d) based upon this determination, an applicant is sent a letter which purports to be a "pre-adverse action" notice.

17.    In fact, the adjudication that occurs prior to the "pre-adverse action" notice is the final step in the adjudication process. Only applicants who seek to affirmatively continue with the process and provide a written response to Mutual of Omaha are considered for employment. Thus, if no one does anything else—GIS, Mutual of Omaha, or the consumer—GIS or Mutual of Omaha automatically mails a second similar notice letter that substantively repeats the previous notice.

18.    Mutual of Omaha ordered a background check on Plaintiff from GIS on December 22, 2015.

19.    The GIS report was inaccurate. GIS improperly reported to Mutual of Omaha that Plaintiff had been convicted of a felony, which was not true.

20.    The GIS report had inaccurately mixed Mr. Smith's identity with that of a totally unrelated person and attributed that person's criminal history to Mr. Smith.

21.    Mr. Smith's report was graded "Review."

22.    Due to this misreported felony conviction, Mutual of Omaha determined that the conviction would bar Mr. Smith from being contracted with the company.

23.    While Mutual of Omaha's procedure itself contemplates an adverse action before a copy of the consumer's report and other disclosures are sent to or received by that applicant, in fact Mutual of Omaha's actual procedure is even less compliant.

24.    Plaintiff Smith was informed that he was denied employment due to his background report.

25.    Neither GIS nor Mutual of Omaha provided Plaintiff Smith with a copy of the background report or written summary of his FCRA rights prior to the adverse action. Additionally, he was denied any opportunity to correct the inaccuracies in his report.

26.    Mr. Smith was deeply upset and embarrassed about the employment rejection by Mutual of Omaha.

27.    Based on the improperly reported information in GIS's report, Mutual of Omaha denied Plaintiff an employment opportunity to sell insurance products through Mutual of Omaha ultimately costing him lost wages.

28.    Although Mutual of Omaha deems an applicant ineligible for employment opportunities based in whole or in part on GIS's consumer reports, it does not notify the applicant of that fact until after the decision has been finalized.

29.     Neither Mutual of Omaha nor GIS provides pre-adverse action notice to job applicants, together with a copy of the applicant's consumer report and a description of the applicant's rights as required by 15 U.S.C. § 1681b(b)(3).

30.     Among other things, the FCRA regulates the collection, maintenance, and disclosure of consumer credit report information by consumer reporting agencies ("CRAs"), including public record information. Additionally, the FCRA mandates conditions, procedures, and limitations on the use of consumer reports for employment purposes by prospective employers and other individuals.

31.     The FCRA defines a "consumer report" as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . employment." 15 U.S.C. § 1681a(d)(1). The factors in this definition are commonly called "seven characteristics" information.

32.     GIS's Reports contain a trove of information about consumers that fall within several of the seven characteristics categories. Plaintiff's reports, for example, contain name and address history, credit history information, date of birth and Social Security Number, state board verifications, and supposed criminal history. Mutual of Omaha ordered this report from GIS for use in evaluating applicants for employment opportunities.

33.     There have been multiple lawsuits against report users to enforce the requirements of Section 1681b(b)(3), and Defendants have access to both the information and documents

relating to those lawsuits and their outcomes as well as legal advice to interpret those outcomes and their potential impact on Mutual of Omaha's hiring process.

34.     Mutual of Omaha's violations of the FCRA have been willful, wanton, and reckless in that it knew, or should have known, that it was failing to comply with the requirements of the FCRA.

35.     Mutual of Omaha's willful disregard of its duties violates the FCRA as a matter of law, and it exacts serious consequences on job applicants and interstate commerce. The natural result of Mutual of Omaha's failures to abide by the conditions, procedures and limitations of the FCRA prejudices consumers' ability to challenge information contained in consumer reports provided to Mutual of Omaha.

36.     The report Mutual of Omaha obtained from GIS was a garden-variety consumer report to be used for employment purposes. It was not obtained in connection with any investigation of suspected misconduct by Plaintiff nor compliance with Federal, State, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting policies of the employer. The exclusion from the FCRA for reports described in 15 U.S.C. § 1681a(y) therefore does not apply to Smith's report or the reports of Class members.

## DEFENDANTS ACTED WILLFULLY

37.     Defendants knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission.

38.     Defendants obtained or had available substantial written materials, which apprised it of its duties under the FCRA.

39.    Defendants understood and was aware that the reports it obtained regarding the Plaintiff and other class members were consumer reports being used for an employment purpose.

40.    Before a person takes an adverse employment action, it must provide two documents to the prospective employee. *See* Letter from Clark W. Brinckerhoff to Erick J. Weisberg (June 27, 1997), FTC Informal Staff Letter ("Brinckerhoff Letter II") (noting that taking action a period of five business days after notice "appears reasonable."); *Williams v. Telespectrum, Inc.,* Civil Action No. 3:05cv853 (E.D. Va. 2006), Report and Recommendation of Magistrate Judge Hannah Lauck dated November 7, 2006, adopted by Judge R. Payne January 8, 2005 (holding that a user of a consumer report must provide to the consumer a copy of the report and disclosure of rights a sufficient amount of time before it takes adverse action so that the consumer can rectify any inaccuracies in the report, and simultaneous provision of the report does not satisfy this requirement); *Kelchner v. Sycamore Manor Health Center,* 305 F. Supp. 2d 429, 435 (M.D. Pa. 2004) (holding a reasonable period for the employee to respond to disputed information is not required to exceed five business days following the consumers receipt of the consumer's report from the employer); *Beverly v. Wal-Mart Stores, Inc.*, Civil Action No. 3:07cv469 (E.D. Va. 2009) (Consent Order providing ChoicePoint mailing of Adverse Action Notices on behalf of its customers shall occur no earlier than five business days after the mailing of the Pre-adverse Action Notices).

41.    To ensure knowing compliance with the FCRA, Congress requires that before any consumer reporting agency may provide consumer reports on an applicant, the reporting agency must have obtained a certification from the employer that it will comply with 15 U.S.C. § 1681b(b)(3) whenever the employer decides to take adverse action based in whole or in part on the consumer report. 15 U.S.C. § 1681b(b)(1)(A).

42.    Upon information and belief, Defendants knowingly executed a certification providing that they would comply with the various provisions of the FCRA whenever adverse action was contemplated or taken based in whole or in part on information contained in a consumer report.

43.    Despite its certification, Defendants knowingly violated 15 U.S.C. § 1681b(b)(3).

44.    Despite knowing of these legal obligations, Defendants acted consciously in breaching its known duties and depriving Plaintiff and other members of the class of their rights under the FCRA.

## CLASS ACTION ALLEGATIONS

### PLAINTIFF'S PROPOSED CLASS

45.    Plaintiff brings this action on a class basis, with the initial class definitions that follow.

46.    Plaintiff bring this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following Class of which he is a member, initially defined below:

> All natural persons residing in the United States (including all territories and political subdivisions of the United States) who the five years preceding the filing of this action (a) submitted an employment application or other request for placement to Mutual of Omaha; (b) were the subject of a consumer report from GIS; (c) which Mutual of Omaha or GIS graded as "review" or "ineligible" and communicated that grade to GIS; and (d) to whom Mutual of Omaha did not provide a copy of the consumer report and summary of rights as required by 15 U.S.C. § 1681b(b)(3) at least five business days before the grade of "review" or "ineligible" was first communicated to GIS.
>
> Excluded from the class definition are any employees, officers, directors of Defendants, any attorney appearing in this case, any judge assigned to hear this action and his or her immediate family or staff.

47.    Upon information and belief, the putative Class exceeds 100 members each. Information concerning the exact size of the putative Class is within the exclusive possession of Defendant or its agents.

48.    The Class members are so numerous that joinder of all members is impracticable.

49.    Plaintiff's claims are typical of the claims of the other Class members as all Class members were similarly affected by Defendants' unlawful conduct in violation of the FCRA.

50.    Plaintiff will fairly and adequately protect the interest of the Class Members and have retained counsel competent and experienced in complex litigation. Plaintiff is a member of the Class and does not have any interests antagonistic to or in conflict with the members of the Class. Plaintiff's claims are the same as those of the Class, which all arise from the same operative facts and are based upon the same legal theories.

51.    Common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting individual Class Members, including:

a.    Whether Mutual of Omaha's letter to applicants that without a written response the application would be declined is an "adverse action" subject to the FCRA notice requirements;

b.    Whether the timing of Mutual of Omaha's notice to consumers that employment opportunities may be declined based in whole or in part on information contained in a consumer report satisfies the timing requirements at 15 U.S.C. § 1681b(b)(3);

c.    Whether GIS's background reports used for employment purposes are "consumer reports" under the FCRA;

d.    Whether the adjudication of an applicant as "review" or "ineligible" is an adverse action under the FCRA; and

e.    Whether Defendants' violations of the FCRA were "willful."

52.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the membership of the Class is so numerous and involves claims that, taken individually, would not justify the costs and effort of bringing suit.

53.     Plaintiff's claims are typical of the other Class Members' claims. As described above, Mutual of Omaha uses common practices and automated systems in committing the conduct that Plaintiff alleges damaged him and the Class. Plaintiff seeks only statutory and punitive damages for his classwide claims and, in addition, Plaintiff is entitled to relief under the same causes of action as the other members of the Class. Mutual of Omaha uniformly breached the FCRA by engaging in the conduct described above, and these violations had the same effect on each member of the Class.

54.     Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests coincide with, and are not antagonistic to, other Class Members' interests. Additionally, Plaintiff has retained counsel experienced and competent in complex, commercial, multi-party, consumer, and class-action litigation. Plaintiff's Counsel has prosecuted complex FCRA class actions across the country.

55.     Finally, the prosecution of several actions by individual members of the Class would create a risk of varying adjudications with respect to members of the Class, as well as create inconsistent standards of conduct for those opposing the Class. Additionally, individual actions by members of the Class may be dispositive of the interests of other members not parties to the adjudication of the claim, which would impair or impede the ability of those individuals to protect their interests.

## COUNT ONE – CLASS CLAIM AGAINST MUTUAL OF OMAHA
### Failure to Provide Pre-Adverse Action Notice – Copy of Report
### 15 U.S.C. § 1681b(b)(3)(A)

56.     Plaintiff realleges and incorporate by reference all preceding allegations of law and fact.

57.     Mutual of Omaha willfully violated 15 U.S.C. § 1681b(b)(3)(A)(i) by failing to provide a copy of the consumer report used to make an employment decision to Mr. Smith and the Class Members before taking adverse action that was based in whole or in part on that report.

58.     Mutual of Omaha willfully violated 15 U.S.C. § 1681b(b)(3)(A)(ii) by failing to provide a copy of the Summary of Rights required by the FCRA to the Plaintiff and the Class Members before taking adverse action that was based in whole or in part on a consumer report.

59.     As a result of this willful FCRA violation, Defendants are liable to Plaintiff and to each Class Member for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) for the violations alleged herein, and for attorneys' fees and costs pursuant to § 1681n and § 1681o.

60.     Plaintiff and the Class Members seek statutory damages for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

61.     Plaintiff and the Class Members also seek punitive damages for this violation pursuant to 15 U.S.C. § 1681n(a)(2) and equitable and/or injunctive relief.

62.     Plaintiff's counsel seeks attorneys' fees and costs pursuant to Fed. R. Civ. P. 23(b) and 15 U.S.C. §§ 1681o and 1681n.

**WHEREFORE**, Plaintiff and the putative Class respectfully pray for the following relief:

A.     An order certifying the proposed class herein pursuant to FED. R. CIV. P. 23 and appointing the Plaintiff and undersigned Counsel to represent them;

B.    The creation of a common fund available to provide notice of and remedy Defendants' unlawful conduct;

C.    That judgment be entered for Plaintiff and the Class statutory damages and punitive damages against Mutual of Omaha for violation of 15 U.S.C. § 1681b(b)(3) or §1681b(f), pursuant to 15 U.S.C. §§ 1681n and 1681o;

D.    Equitable and/or injunctive relief;

E.    Attorneys' fees, expenses, and costs; and

F.    Pre-judgment and post-judgment interest as provided by law.

**TRIAL BY JURY IS DEMANDED**

DATED: December 20, 2017.

Respectfully submitted,

**BRUCE SMITH,** *individually and on behalf of and all others similarly situated*

Jeffrey M. Lipman (AT0004738)
1454 30th Street, Suite 205
West Des Moines, IA 50266-1312
(515)276-3411
FAX: (515)276-3736

Leonard A. Bennett, VSB No. 37523
*(Subject to admission pro hac vice)*
Elizabeth W. Hanes, VSB No. 75574
*(Subject to admission pro hac vice)*

**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: Elizabeth@clalegal.com
**ATTORNEYS FOR PLAINTIFFS**