**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| **BRUCE JONATHAN SMITH,** ***individually and on behalf of all others similarly situated,*** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **MUTUAL OF OMAHA INSURANCE COMPANY, MUTUAL OF OMAHA INVESTOR SERVICES, INC., UNITED OF OMAHA LIFE INSURANCE COMPANY, and UNITED WORLD LIFE INSURANCE COMPANY,** <br><br> **Defendants.** | **Civil Action No.: 4:17-cv-00443-JAJ-CFB** <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT** |

COMES NOW the Plaintiff, Bruce J. Smith, on behalf of himself and on behalf of others similarly situated, by Counsel, and opposes Defendants, Mutual of Omaha Insurance Company, Mutual of Omaha Investor Services, Inc., United of Omaha Life Insurance Company, and United World Life Insurance Company's (collectively referred to herein as "Mutual of Omaha" or Defendants) Motion to Dismiss Plaintiff's First Amended Class Action Complaint. (Doc. 23.) For the reasons that follow, the Court should deny the Motion.

## I. OVERVIEW.

Countless employers use consumer reports, commonly referred to as "background checks," to screen applicants for employment and employees for promotion. The Fair Credit Reporting Act ("FCRA") imposes upon such persons—the users of the reports—strict, easy-to-follow requirements when the information in the reports forms part of a hiring decision. 15 U.S.C. § 1681b(b). One of the fundamental, most-powerful rights the FCRA grants consumers in the

employment context is the requirement of notice before an adverse action is taken, the design of which is to arm the consumer with the same information the decision-maker is viewing in arriving at a negative hiring decision. 15 U.S.C. § 1681b(b)(3). Plaintiff asserts that Defendants violated these requirements when they obtained a background check about him from GIS and refused to hire him to sell insurance for them when the GIS report inaccurately stated that Plaintiff was a felon. (Doc. 22 ¶¶ 26–30.) The statute demands notice before such a decision takes place, and Plaintiff alleges Defendants failed to provide it.

Defendants hope to avoid FCRA liability by claiming that Plaintiff would not have been their direct employee but, rather, applied for a position as an independent contractor. Arriving at this conclusion requires the Court to not only accept Defendants' arguments that are largely unsupported by competent evidence, if at all, but also to ignore the broad language of the statute and decisions interpreting it which have held that the FCRA provisions at issue here apply to persons making hiring decisions even if those persons would not be the ultimate employer. Defendants have not shown that they can win on either point, cementing the applicability of the FCRA and therefore the Court's jurisdiction, and requiring the denial of Defendants' Motion.

## II. FACTUAL BACKGROUND.

Plaintiff applied for full-time employment as a Mutual of Omaha Financial Advisor in December 2015. (Ex. 1, Declaration of Bruce Smith ¶ 2.) Plaintiff understood the relationship to be one of traditional, full-time employment as a direct employee of Mutual of Omaha. (*Id.* ¶¶ 2–3.) Plaintiff would have been working in a Mutual of Omaha office, by the company's schedule, selling only Mutual of Omaha products (and therefore restricted from selling others' products), and paid by Mutual of Omaha either a salary or commissions on his sales. (*Id.* ¶¶ 4–7.) Plaintiff's

employment with Mutual of Omaha was contingent on his passing a background check. (Doc. 22 ¶ 17.)

Defendants obtained an FCRA-governed background check about Plaintiff from GIS, which included an entry stating that Plaintiff had been convicted of a felony. (Doc. 22 ¶¶ 26–27.) This entry was false—Plaintiff has no such conviction. (*Id.*) Defendants informed Plaintiff that because of this felony entry on his consumer report, they would not hire him. (*Id.* ¶¶ 30, 32.) At no time did Defendants provide Plaintiff with a copy of his consumer report or written summary of his FCRA rights before taking this adverse action against him. (*Id.* ¶ 33.)

## III. LEGAL FRAMEWORK.

### A. The Statutory Provisions At Issue.

The FCRA governs the use of "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for," among other things, employment. 15 U.S.C. § 1681a(d)(1). The statute requires users of consumer reports in the employment context to provide employment-applicant consumers with a specific notice before it uses the contents of a background report "in whole or in part" to take "any adverse action" against them. 15 U.S.C. § 1681b(b)(3). The notice, colloquially known as the pre-adverse-action notice, must consist of a copy of the report on which the adverse decision is based and a written summary of the consumer's rights under the FCRA. *Id.* The Act defines an "adverse action" in this context to mean "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee" or "an action taken or determination that is . . . "adverse to the interests of

the consumer." *Id.* § 1681a(k)(1)(B)(ii), (B)(iv). "[S]ubsection [1681b(b)(3)] protects the consumer against adverse employment actions based on a consumer report that the consumer has had no opportunity to review or discuss with his or her current or prospective employer." *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 632 (E.D. Va. 2016). The Act imposes these requirements upon "persons" using the reports, which the Act defines as just about any individual or entity. 15 U.S.C. §§ 1681b(b)(3); 1681a(b).

The Federal Trade Commission has long recognized that these employment-purposed provisions of the Act are to be broadly construed to effectuate the FCRA's consumer-protection purposes. When discussing the meaning of "employment purposes," for example, the F.T.C. notes:

> INDEPENDENT CONTRACTORS, AGENTS, AND VOLUNTEERS
>
> Because the term "employment purposes" is interpreted liberally to effectuate the broad remedial purpose of the FCRA, *it may apply to situations where an entity uses individuals who are not technically employees to perform duties*.

Fed. Trade Comm'n, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT, 32 (2011) (emphasis added, footnotes omitted).[1] The F.T.C. has subscribed to this notion for decades, explaining in a 1998 Advisory Opinion to an attorney representing a trucking company that the company's hiring of independent contractors fell within the definition of "employment purposes," so the FCRA applied to the company's use of consumer reports in its hiring process. Fed. Trade Comm'n, Advisory Opinion to Allison (Feb. 23, 1998).[2] In a letter that same year, to an attorney whose insurance-company client requested clarity about its proposed use of consumer reports to reduce embezzlement among individuals it considered to be independent contractors, the F.T.C. relied on the Allison Opinion's statement that "employment purposes" is indeed broad. Fed. Trade

---

[1] *Available at* https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf.
[2] *Available at* https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-allison-02-23-98.

Comm'n, Advisory Opinion to Solomon (Oct. 27, 1998).[3] The F.T.C. concluded that the insurance company's "relationship with the individuals who sell title insurance, examine titles, and close real property transactions would be similar to" that in Allison, and the company "would be obtaining reports on individuals who are not its employees but will be performing work for your client" so that the insurance company could gauge their fitness for those positions. *Id.* The F.T.C. concluded that such circumstances constitute "employment purposes" and the FCRA would therefore govern the insurance company's use of the reports about the independent contractors. In other words, simply branding an individual as an "independent contractor" is not enough to escape the FCRA's broad employment-purposes reach.

**B. Standard Of Review**.

A motion challenging jurisdiction under Rule 12(b)(1) may be either facial or factual in nature. *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018). A facial attack challenges the sufficiency of the allegations underlying subject-matter jurisdiction. *Id.* In a factual attack, the defendant disputes the veracity of the facts underlying subject-matter jurisdiction. *Id.* In considering the substance of a factual attack the Court may resolve factual disputes based on "competent evidence such as affidavits, deposition testimony, and the like." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) (citing *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)). Should the Court conclude that it lacks subject matter jurisdiction, all it may do is dismiss the case without prejudice. *McMahon v. Robert Bosch Tool Corp.*, No. 4:18-CV-505 CAS, 2018 WL 1744539, at *3 (E.D. Mo. Apr. 11, 2018).

[3] *Available at* https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-solomon-10-27-98.

## IV. ARGUMENT AND AUTHORITIES.

### A. Defendants' Challenge Fails On The Merits.

#### 1. Defendants' evidence is incompetent to support their arguments.

Defendants' arguments against jurisdiction seek a finding that because Plaintiff applied to be an independent contractor, Defendants would not be his employer and therefore the FCRA does not apply because their use of the report was not for "employment purposes." (Doc. 23 a 5.) Defendants merely argue, incorrectly, that Section 1681b(b)(3) "does not apply to independent contractors." (*Id.* at 8.) Defendants base these arguments on precious little evidence relative to what they possess about Plaintiff in particular and their application process in general, relying on a few documents that were undoubtedly chosen for their superficial appeal and supposed applicability to Defendants' litigation arguments. The Court should look beyond these ploys and conclude that Defendants' Motion lacks merit altogether.

While the Court may consider evidence in rendering its decision on jurisdiction, the Eighth Circuit is clear that such evidence must be "competent"—in the vein of affidavits, sworn testimony, and such that would be sufficient to support a motion for summary judgment. *See Titus*, 4 F.3d at 593. Defendants provide no such evidence, falling short of even attempting to authenticate the documents they attach to their Motion. (*See* Doc. 23-2.) All Defendants include with their Motion are a portion of Plaintiff's application materials and one contract, undated and unsigned, which Defendants do not place into context at all. (*See* Doc. 23-1 at 8.) Put succinctly, Defendants never claim that Plaintiff would have been subject to that contract had he passed his background check, nor do they more broadly argue that this agreement is the only one that covers the type of position for which Plaintiff was being considered. (*Id.* at 8–9.) Instead, all Plaintiff and the Court know is that Defendants have this contract document, they attached it to their Motion,

and cite one paragraph from it. There is no basis whatsoever to conclude that this document would have in any way governed the relationship between Plaintiff and any Defendant. The Court should refuse to consider such evidence because it is not competent to counter any of Plaintiff's jurisdictional facts. *Titus*, 4 F.3d at 593.

Separately, Defendants fail to provide a complete picture of the documents they presented to Plaintiff in the application process, tacitly confirming that there are other documents that are harmful to their arguments or helpful to Plaintiff's. Certainly if the notion of an independent-contractor relationship pervades Defendants' application materials, all of those documents would have been included with Defendants' Motion. Defendants' cherry-picking of documents with what they view are favorable snippets further shows that their arguments would be undermined by a complete record.

This is particularly true given that Plaintiff identified specific documents that would show that Defendants purchased reports they knew were governed by the FCRA from their background reporting company, GIS, and that Defendants certified to GIS that they would comply with the FCRA in using those reports. In his First Amended Complaint, Plaintiff notes:

> 23. . . . [B]ased upon the known content of GIS's standard mandatory contract with companies/customers such as Defendants, Defendants would have represented to GIS that the only purpose for which they would obtain and use Plaintiff's GIS consumer report would be for an employment purpose.
>
> 50. Discovery will show that Mutual of Omaha signed GIS's standard agreement for it to provide background checks for employment purposes, which repeatedly confirms that GIS will supply Mutual of Omaha with consumer reports for employment purposes, that the FCRA governs the reports, that Mutual of Omaha agrees to comply with the provisions of the FCRA relating to the use of reports for employment purposes, that Mutual of Omaha will use the reports for purposes governed by the FCRA, and that Mutual of Omaha will independently educate itself about the governing FCRA requirements, among other things relating to the FCRA.

> 51. Discovery will further show that Mutual of Omaha confirmed to GIS that the FCRA permissible purpose for its purchase of the report on Plaintiff was employment.
>
> 52. Discovery will show that through their relationship with GIS, Defendants knowingly executed a certification providing that they would comply with the various provisions of the FCRA whenever adverse action was contemplated or taken based in whole or in part on information contained in a consumer report.

(Doc. 22 ¶¶ 23, 50–52.) Defendants' utter failure to dispel or even deal with these allegations all but verifies that they are true. If the contract with GIS is contrary to these allegations, Defendants would have provided it. If there is no contract with GIS because the FCRA supposedly does not apply to the reports at all, Defendants would have a witness so testify in a declaration. If Defendants give no confirmation or certification of an FCRA permissible purpose to GIS for reports Defendants obtain, a witness would confirm that as well. It is not too illogical a leap to conclude that Defendants' lack of engagement on these points confirms Plaintiff is right about all of them.

**2. Defendants cite no authority making the jurisdictional decision they ask the Court to reach.**

Further telling as to how the Court should rule is Defendants' inability to cite a single case deciding the independent-contractor issue their way. The only case to which Defendants direct the Court, *Lamson v. EMS Energy Marketing Service, Inc.*, 868 F. Supp. 2d 804 (E.D. Wis. 2012), is a summary-judgment decision rendered on a full record rather than on unauthenticated, carefully selected documents attached to a motion to dismiss. As the Court would likely imagine the *Lamson* decision is quite detailed, examining multiple aspects of the relationship between the applicant and defendant. *Id*. at 810–18. There is nowhere near the level of evidence present here for the Court to arrive at the same conclusion as the *Lamson* court, even assuming that conclusion was the right one. The Court should therefore give that case no weight.

But *Lamson* is not the final word on this issue anyway. A later case, *Ernst v. Dish Network, LLC*, 49 F. Supp. 377 (S.D.N.Y. 2014), concluded that a summary report that Dish Network used to evaluate the possible criminal tendencies of employees of third-party contractors who would perform work for Dish Network customers was a "consumer report" that Dish obtained for "employment purposes," so the FCRA applied. *Id.* at 384. The court reached these conclusions against arguments like those Defendants raise here—that Dish was not the true employer of the consumers, so it was immune from FCRA liability. *Id.* at 383–84. The court rejected that argument, noting that "the statute requires that the information be collected or used for 'employment purposes' without specifying who is using or collecting the information." *Id.* at 384. The *Ernst* court also disagreed with the holding in *Lamson*, noting it "is at odds" with the statutory language and does not follow other better-reasoned decisions by the Fourth and Fifth Circuits. *Id.*

Defendants' entire line of argument requires the Court interpret Section 1681b(b)(3) to apply solely to the entity that would employ the consumer. Other courts and the F.T.C. have not read Section 1681b(b)(3) so narrowly, because the statutory language is quite broad. The Act defines the use of a report for "employment purposes" as being "the purpose of evaluating a consumer for employment, promotion, reassignment or retention as an employee." 15 U.S.C. § 1681a(h). It explains that Section 1681b(b)(3)'s notice requirements apply to "persons" who would use reports to make adverse hiring decisions, not solely to "employers" (which the statute does not define),[4] and defines a "person" as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." *Id.* §§ 1681b(b)(3); 1681a(b).

---

[4] Congress of course understood the import of the word "person" it used in Section 1681b(b)(3), as it uses the term "employer" in several other sections of the Act. *See, e.g.*, 15 U.S.C. §§ 1681a(o); 1681a(y).

These statutory definitions make complete sense, as they recognize the reality that it is not necessarily the true employer that may be using a consumer report to evaluate someone for an employment purpose. *Ernst* reached just this result. The Eastern District of Pennsylvania court acknowledged as much years ago in *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc*., 848 F.Supp.2d 532, 540–41 (E.D. Pa. 2012), where it concluded that Section 1681b(b)(3)'s notice requirements applied to a consumer reporting agency ("CRA")—not the employer for whom it produced background checks—because the CRA was the one making the employer's hiring decisions based on the contents of the reports it created for that employer. As that court explained:

> As explained below . . . any person who takes an adverse action must comply with § 1681b(b)(3)(A), be it a CRA, an employer, or a staffing agency. *Adams* holds that a decision to furnish a report to an employer can be an adverse action.

*Id.* at 539. So, even if Defendants were not to be Plaintiff's true employer, the fact that they would require that Plaintiff meet their criteria to be an employee of another and sell Defendants' products, with Defendants holding the King's X over whether Plaintiff could be employed to sell Defendants' products at all, brings Defendants under the Section 1681b(b)(3) notice umbrella. *See Ridenour v. Multi-Color Corp.*, 147 F. Supp. 3d 452, 457 (E.D. Va. 2015) (adopting the reasoning in *Goode* and rejecting argument that CRA could not be a user of a report it created such that it was not required to provide Section 1681b(b)(3) notice when it participated in the use of such report to cause the rejection of plaintiff for employment). Defendants provide no true argument, and certainly no authority, to the contrary.

**B. Evidence Confirms Plaintiff Has Adequately Pleaded A Violation Of Section 1681b(b)(3).**

While Defendants offer evidence that invokes more questions than answers it provides, Plaintiff has attached a sworn declaration that sets out actual evidence confirming that he would be an ordinary employee and the FCRA therefore applies to Defendants' use of the consumer

report about him. Plaintiff states, plainly, that he applied for what he expected would be garden-variety, direct employment with Defendants, he expected to be a directly controlled employee of Defendants, no one ever spoke to him about his being an independent contractor, and the first he learned about such a claim was when Defendants filed their Motion to Dismiss. (Ex. 1, Smith Decl. ¶¶ 2–7.) Under these facts, which Defendants do not controvert with anything other than argument, Defendants obtained a consumer report about Plaintiff so that they could screen him for direct employment. The FCRA therefore applies. 15 U.S.C. § 1681b(b)(3).

Even assuming for a moment that Defendants' application evidence is competent, those submissions confirm that the FCRA applies to the report they obtained about Plaintiff because the documents are rife with references to the FCRA. The document entitled "**Fair Credit Reporting Act Disclosure**" notes that Defendants "will obtain and use *consumer reports* for the purpose of serving as a factor in establishing" the applicant's eligibility for a position with Defendants.[5] (Doc. 23-2 at 7 (italics added).) The document continues:

> "Consumer report" means a written, oral or other communication of any information by a consumer reporting agency bearing on your credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics or mode of living which will be used by Mutual of Omaha, in whole or in part for the purpose of serving as a factor in establishing your eligibility [for a position].

(*Id.*) These phrases and descriptions are taken almost word-for-word from the text of the FCRA. *See* 15 U.S.C. § 1681a(d)(1). Defendants also obtained Plaintiff's written authorization for a "consumer reporting agency" to obtain information about him, and his agreement by checking a box on the authorization form that he intends "to sign this *Fair Credit Reporting Act Disclosure* and that this shall constitute my signature." (Doc. 23-2 at 8 (emphasis added).) Having provided

[5] That the document characterizes the position as "independent contractor" is of no moment, as Defendants have provided no evidence at all as to the validity of this description.

such documents to Plaintiff, Defendants certainly seem to believe that the FCRA covers the information they used to deny him employment.

But these application documents tell more than just their content reveals. If the FCRA did not apply to Defendants' obtaining a report about Plaintiff, there is no need to provide the disclosure of Defendants' intent to obtain a report about him or obtain Plaintiff's authorization to do so. Those requirements are only imposed upon persons that obtain consumer reports for use for employment purposes—circumstances that the FCRA unequivocally governs. 15 U.S.C. § 1681b(b)(2); *see Anderson v. Wells Fargo Bank, N.A.*, 266 F. Supp. 3d 1175, 1184 (D.S.D. 2017) (discussing history of that statutory section and its application in the employment context). Defendants again fail to engage these genuine problems with their evidence, despite Plaintiff having raised the issues in his Complaint:

> 18. As part of the hiring process, Mutual of Omaha presented Plaintiff with a document purporting to authorize Mutual of Omaha to obtain a consumer background report about him for employment purposes.
>
> 19. This document, which is entitled "Fair Credit Reporting Act Disclosure," is required of companies seeking to use consumer reports for employment purposes. 15 U.S.C. § 1681b(b)(2). If the report was not to be used for employment purposes as governed by the FCRA, there would be no need to provide this Disclosure to Plaintiff.
>
> 20. As the FCRA demands, the Disclosure also notes that Mutual of Omaha will obtain a consumer report about Plaintiff, again a requirement for use of consumer reports for employment purposes. *See id.*
>
> 21. As also required by the FCRA in the employment context, Mutual of Omaha obtained Plaintiff's written authorization to obtain a consumer report about him for use in the hiring process. If the report was not to be used for employment purposes as governed by the FCRA, there would be no need to obtain Plaintiff's written authorization to obtain the report.

(Doc. 22 ¶¶ 18–21.) Defendants do not deal with these allegations because they cannot—these facts run headlong into Defendants' attempts to argue around FCRA application, so Defendants

sidestep them. Given Defendants' weak support of their arguments that Plaintiff would be anything other than a traditional, direct employee, the Court should deny their Motion.

Moreover, nowhere do Defendants deny that they are a "user" of Plaintiff's report, a categorization that further dooms their Motion. As explained thoroughly above, the FCRA applies to entities and individuals who may not ultimately be the consumer's employer, so long as they are the users of consumer reports in connection with an employment decision. Defendants' near acceptance of their status as users of Plaintiff's report is further evidence that Defendants' Motion fails.

### C. Defendants' Challenge To Plaintiff's Status As A Class Representative Depends Entirely On Success On Their Other Arguments.

Defendants' last gasp effort to ruin the case would have the Court pass upon Plaintiff's ability to serve as a Class Representative because he supposedly lacks standing. Success on this argument requires that the Court grant Defendants' Motion and find that the FCRA does not apply, which would then leave the Class without a valid representative. Whatever validity such arguments may have pre-certification, the Court should refuse to consider them independent of Defendants' other arguments because if the Court concludes that Plaintiff has standing, Defendants cannot win their challenge to his status as a Class Representative. It is simply a derivative argument—if Plaintiff has no standing for his own claim, he has no standing to represent the Class. (Doc. 23 at 9.) The opposite side of the coin of course holds true as well—should the Court conclude Plaintiff has standing, he may continue to represent the Class because individual class member standing is not an aspect the Court considers at any point, even on class certification. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, n.6 (2016) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, *not that injury has been suffered by other, unidentified members*

*of the class to which they belong*.'") (emphasis added); *Lewis v. Casey*, 518 U.S. 343 (1996) (Soutter, J., concurring) ("[T]he standing issue focuses on whether the plaintiff is properly before the court, *not whether represented parties or absent class members are properly before the court*.") (emphasis added); *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966-69 (7th Cir. 2016) (assessing standing in a putative class action with respect only to the named plaintiffs); *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 367 (3d Cir. 2015) ("Quite simply, requiring Article III standing of absent class members is inconsistent with the nature of an action under Rule 23."); *Bernal v. NRA Grp., LLC,* , No. 16 C 1904, 2016 WL 4530321, at *4 (N.D. Ill. Aug. 30, 2016) ("The standing inquiry for class actions pertains only to the class representative."); *McLaughlin v. Wells Fargo Bank, NA*, No. 15-cv-02904-WHA, 2016 WL 3418337, at *6 n.5 (N.D. Cal. June 22, 2016) ("[P]laintiff borrower has standing to assert her TILA claim; so too does the class."). As Plaintiff has adequately defeated Defendants' arguments on the merits, the Court should refuse to make any determination regarding his Class Representative status.

**D. The Court Should Permit Targeted Discovery Relating To FCRA Applicability.**

Eighth Circuit law permits the Court broad latitude in what it may consider in rendering its decision on a Rule 12(b)(1) motion, allowing even a full-blown evidentiary hearing with witness testimony should the Court deem it necessary. *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990). Here, if the Court believes that Plaintiff has not sufficiently countered Defendants' arguments that he would have been an independent contractor or that the FCRA would not apply, as Defendants posit, Plaintiff requests that the Court permit targeted discovery on these points so that the Court may make its decision on a fully-developed record, including information that Defendants possess on these topics but that remains hidden because of the posture of the case.

## V. CONCLUSION.

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss or, alternatively, should permit targeted discovery so that Plaintiff and the Court may learn the genuine nature of Plaintiff's employment with Defendants and their use of consumer reports.

DATED: May 31, 2018.

Respectfully submitted,

BRUCE SMITH, *individually and on behalf of and all others similarly situated*

/s/ *Jeffrey M. Lipman*

Jeffrey M. Lipman
**LIPMAN LAW FIRM PC**
1454 30th St., Suite 205
West Des Moines, IA 50266-1312
515 276 3411
Fax: 515 276 3736
Email: lipmanlawfirm@aol.com

Leonard A. Bennett (*pro hac vice*)
Elizabeth W. Hanes (*pro hac vice*)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: elizabeth@clalegal.com

***ATTORNEYS FOR PLAINTIFF***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 31st day of May, 2018, I caused the foregoing document to be filed using the Clerk of Court's CM/ECF system, which then sent a notice of electronic filing to all Counsel of Record.

/s/ *Jeffrey M. Lipman*
Jeffrey M. Lipman
**LIPMAN LAW FIRM PC**
1454 30th St., Suite 205
West Des Moines, IA 50266-1312
515 276 3411
Fax: 515 276 3736
Email: lipmanlawfirm@aol.com