# `IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| BRUCE JONATHAN SMITH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MUTUAL OF OMAHA INSURANCE COMPANY, MUTUAL OF OMAHA INVESTOR SERVICES, INC., UNITED OF OMAHA LIFE INSURANCE COMPANY, and UNITED WORLD LIFE INSURANCE COMPANY,<br><br>Defendants. | No. 4:17-cv-00443-JAJ-CFB<br><br>**ORDER** |

This matter comes before the Court pursuant to Defendants' May 17, 2018 Motion to Dismiss. [Dkt. No. 23] On May 31, 2018, Plaintiff Bruce Smith responded to Defendants' motion. [Dkt. No. 25] On June 18, 2018, Defendants replied. [Dkt. No. 31] On June 28, 2018, Plaintiff filed his sur-reply. [Dkt. No. 35] Defendants filed a Motion to Supplement Defendants' Motion to Dismiss on July 19, 2018. [Dkt. No. 36] Plaintiff responded to the Motion to Supplement on July 27, 2018. [Dkt No. 38] Defendants replied on August 3, 2018. [Dkt No. 39]. For the reasons that follow, Defendants' Motion to Dismiss is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 20, 2017, Plaintiff Bruce Jonathan Smith filed a Class Action Complaint in this Court against Mutual of Omaha Insurance Company; Mutual of Omaha Investor Services, Inc.; United of Omaha Life Insurance Company; and United World Life Insurance Company (hereinafter "Mutual of Omaha" or "Defendants"). [Dkt. No. 1] In his one-count Complaint, Smith alleged that Mutual of Omaha violated the Fair Credit Reporting Act by failing to provide him (and a class of similarly situated plaintiffs) with the pre-adverse action notice required by

1

15 U.S.C. § 1681b(b)(3)(A). [Dkt. No. 1] Specifically, Smith alleged that he had applied to contract with Mutual of Omaha as an insurance salesperson, but had not been hired due to a falsely reported felony on his background check. [Dkt. No. 1] According to Smith's Complaint, Mutual of Omaha failed to provide him with the statutorily-mandated prior notice that the background check had led to his non-hiring. [Dkt. No. 1] Smith's Complaint also stated that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 15 U.S.C. § 1681p (the Act's jurisdictional provision). [Dkt. No. 1]

Arguing that the FCRA only requires notice when an applicant seeks to be hired *as an employee*, Mutual of Omaha filed a motion to dismiss Smith's suit for lack of subject matter jurisdiction on February 26, 2018. [Dkt. No. 13] Smith responded by moving to amend his complaint under Federal Rule of Civil Procedure 15(a)(2), with the Amended Complaint now setting forth an allegation that he was attempting to become an employee rather than an independent contractor. [Dkt. No. 19] With no opposition from Mutual of Omaha, this Court granted Smith's motion on April 23, 2018, and Smith filed his First Amended Class Action Complaint four days later. [Dkt. Nos. 21, 22]

On May 17, 2018, Mutual of Omaha moved under Federal Rule 12(b)(1) to dismiss the First Amended Class Action Complaint, again arguing that this Court lacks subject matter jurisdiction over Smith's claim. [Dkt. No. 23] In the five months since, the parties have filed a host of motions before this Court, culminating in a sur-sur-sur-sur-reply styled a "Reply In Support of Motion to Supplement Defendants' Motion to Dismiss" and filed by Mutual of Omaha on August 3. [Dkt. Nos. 23, 25, 31, 35, 36, 38, 39]. While some of the extensive briefing has focused on procedural matters such as whether the sur-sur-sur-sur-reply should be considered by this Court, these matters are unlikely to affect this Order, as the parties' arguments at this point have not materially changed since their opening salvos.

Mutual of Omaha argues that despite Smith's claims in the First Amended Class Action Complaint that he was applying to work as an employee, he was in fact only ever applying to work as a contractor. [Dkt. No. 23-1, at 8–9] The Company also asserts that the FCRA does not provide a pre-adverse action notice requirement when an applicant seeks only to be hired as a contractor. [Dkt. No. 23-1, at 5] With Smith thus not protected by the FCRA, Mutual of Omaha argues that he has no standing to sue. [Dkt. No. 23-1, at 8–9]

2

Smith, in contrast, argues that the evidence before the Court is as yet insufficient to determine whether he was to be an independent contractor or an employee. [Dkt. No. 25, at 14] But even if he was applying to be an independent contractor, Smith argues, the FCRA should still govern his relationship with Mutual of Omaha. [Dkt. No. 25, at 8–10] Smith also advocates that given the fact-bound nature of Mutual of Omaha's attack on his standing to sue, the Court should gather a more complete record, so as to decide this case at the summary judgment stage (or later) instead of ruling on the pleadings. [Dkt. No. 25, at 14]

At present, there are only five pieces of evidence before this Court. Smith has submitted a sworn Declaration, while Mutual of Omaha has submitted two exhibits purporting to be forms connected to Smith's job application and two affidavits swearing to the forms' authenticity and content. [Dkt. Nos. 23-2, 25-1, 36-1]. Each party questions the relevancy and competence of the other's evidence.

## II. LEGAL STANDARD

### A. Standing

Under Article III of the Constitution, the "judicial Power" is limited to the adjudication of "Cases" and "Controversies." U.S. Const. art. III. Arising from this central limitation on the power of federal courts is the doctrine of standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992). While other prudential concerns are incorporated into standing doctrine, the "irreducible constitutional minimum of standing," consists of three elements: "(1) injury in fact, (2) a causal connection between that injury and the challenged conduct, and (3) the likelihood that a favorable decision by the court will redress the alleged injury." *Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 869 (8th Cir. 2013) (quoting *Lujan*, 504 U.S. at 570). "If a litigant lacks Article III standing to bring his claim, then the court has no subject matter jurisdiction over the suit." *Id*.

Under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss a complaint if it lacks jurisdiction. When faced with a Rule 12(b)(1) motion to dismiss, a court "must distinguish between a 'facial attack' and a 'factual attack.'" *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015) (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). In a facial attack, the court looks to the face of the pleadings and merely asks whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction. *Id*. (quoting *Menchaca v. Chrysler Credit*

*Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). But in a factual attack—that is, when a party challenges the *actual* existence of subject matter jurisdiction, regardless of the content of the pleadings—the court may consider matters outside the pleadings, such as affidavits or testimony. *Id.* In a facial attack, but not a factual attack, the non-moving party receives the same protections as it would receive under a Rule 12(b)(6) motion. *Id.* (quoting *Osborn*, 918 F.2d at 729 n.6).

A court is obligated to ensure that it has proper jurisdiction over a claim before proceeding to the merits. *See Ashley v. U.S. Dep't of Interior*, 408 F.3d 997, 1000 (8th Cir. 2005). In determining its own jurisdiction, a court may utilize "any rational mode of inquiry." *Osborn*, 918 F.2d at 730 (quoting *Crawford v. United States*, 796 F.2d 924, 929 (7th Cir. 1986)). But unless and until it is satisfied that it has jurisdiction, a court may not assume "hypothetical jurisdiction" to decide "contested questions of law." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998). Even so, there will be instances where a jurisdictional issue is "so bound up with the merits" that it must be decided at a later stage. *Osborn*, 918 F.2d at 730 (quoting *Crawford*, 796 F.2d at 929).

### B. Fair Credit Reporting Act

The Fair Credit Reporting Act ("FCRA") is a broad statute designed to ensure that credit reports are fair and accurate. *See* 15 U.S.C. § 1681. Under the FCRA, a background check performed by an outside vendor is designated a "consumer report," while the individual to whom the background check pertains is the "consumer." The FCRA provides many different purposes for which a consumer report may be obtained, prescribing different procedures and protections for each purpose. *See generally* 15 U.S.C. §§ 1681b(a)(3)(A)–(G).

Some of the Act's most stringent protections apply when a consumer report is being obtained "for employment purposes." 15 U.S.C. § 1681b(b). In particular, a person looking to procure a consumer report for employment purposes must first obtain the consumer's written authorization for the procurement of the report by that person—a requirement known as "stand-alone disclosure." 15 U.S.C. § 1681b(b)(2)(A)(i). And when the consumer report will be used to make an adverse employment decision, the person intending to take such action must first provide the consumer with a copy of the report and a summary of his rights under the FCRA—a requirement known as "pre-adverse action" notice. 15 U.S.C. § 1681b(b)(3)(A). Neither stand-

alone disclosure nor pre-adverse action notice is required unless the report is obtained for employment purposes. *See generally* 15 U.S.C. § 1681b(b)(2)(A).

The "Definitions" section of the FCRA states that "[t]he term 'employment purposes' when used in connection with a consumer report means a report used for the purpose of evaluating a consumer for employment, promotion, reassignment or retention as an employee." 15 U.S.C. § 1681a(h).

### III. ANALYSIS AND CONCLUSION

The Court must address the jurisdictional issue first. Were Smith not to have standing, dismissal without prejudice would be compelled, and the Court would have nothing to say about the FCRA. Because Smith has laid out a set of facts that plausibly allege he has standing, and because one factual issue—whether he was applying to be an employee or an independent contractor—is central to both the jurisdictional question and the merits, the Court declines to dismiss his claim at this juncture.

#### A. Smith has properly alleged standing.

In order to have standing, Smith must establish: "(1) injury in fact, (2) a causal connection between that injury and the challenged conduct, and (3) the likelihood that a favorable decision by the court will redress the alleged injury." *Iowa League of Cities*, 711 F.3d at 869 (quoting *Lujan*, 504 U.S. at 570). Here, the first two requirements are undisputed. Mutual of Omaha challenges the third element, though, arguing that Smith "will never be able" to show redressability. [Dkt. No. 23-1, at 8] That is, because Mutual of Omaha is certain that the FCRA does not apply to independent contractors, and that Smith was only applying to contract, Smith could never "fall within the scope or protections of the FCRA." [Dkt. No. 23-1, at 9] The Court does not, however, consider Mutual of Omaha's assumption about Smith only applying for contractor status to be finally established given the limited factual record currently before the Court. Smith's ideal decision from this Court would be one that holding that the FCRA covers applicants like him—whether because it covers independent contractors, or because Smith himself was to be an employee. If this Court were to so hold, there seems no doubt that Smith's injury would be redressed.

Smith has thus laid out a narrative in his First Amended Complaint—his application to be an employee, the lack of pre-adverse action notice, his not being hired, and his right to bring a claim under the FCRA—that alleges injury in fact, causation, and redressability. Defendants' claim that Smith was not applying for employee status is central to the merits of the case and should be brought as an attack on the merits, not severed and treated as a separate jurisdictional attack. *Compare Osborn*, 918 F.2d at 729 (finding that a statute of limitations question was factually severable from a medical negligence claim), *and Hawaii FIT Four LLC v. Ford*, 2017 WL 4883421, at *4–5 (D. Haw. Oct 30, 2017) (considering a factual attack on diversity of citizenship without touching the merits), *with Thornhill Pub. Co., Inc. v. General Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (refusing to dispose of a jurisdictional attack on a Sherman Attack claim before reaching the merits because the jurisdictional and substantive questions required proof of the same interstate commerce element).

### B. The FCRA only applies to employees.

Now certain of its jurisdiction, the Court turns to the issue of the FCRA's applicability to independent contractors. This question of law is of course altogether separate from the question of whether Smith himself would have been an employee.[1]

Though FCRA's reach is a matter of first impression in the Eighth Circuit, the Court is unavoidably confronted with the text of the Act, which makes clear that the pre-adverse action notice requirement only applies when a consumer report is used for employment purposes. 15 U.S.C. §1681b(b)(3). While Smith argues that "employment purposes" should be read broadly, so as to give the FCRA its intended consumer-protective scope, this argument belies the enacted text of the statute. The meaning of "employment purposes" is specifically defined in the statute, and it is defined as being "used for the purpose of evaluating a consumer for employment, promotion, reassignment or retention *as an employee*." 15 U.S.C. § 1681a(h) (emphasis added). The Court takes no position, at this stage, on whether Smith would have been an employee, rather than an independent contractor. But if he would not have been an employee, then his FCRA claim will necessarily fail.

---

[1] Under *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 1344, 1348 (1992), a court considers numerous factors to determine whether a worker is an employee or an independent contractor. A label of "employee" or "independent contractor" is not decisive; "all of the incidents of the relationship must be assessed." *Id*.

The unambiguous definition of "employment purposes" has been recognized by two other district courts that have taken up this precise question. *See Johnson v. Sherwin-Williams Co.*, 152 F. Supp. 3d 1021, 1026–27 (N.D. Ohio 2015) (dismissing an independent contractor's FCRA claim, for failure to state a claim); *Lamson v. EMS Energy Marketing Service, Inc.*, 868 F. Supp. 2d 804, 816 (E.D. Wis. 2012) (same, on summary judgment). And while Smith cites *Ernst v. Dish Network, LLC*, 49 F. Supp. 3d 377, 383–84 (S.D.N.Y. 2014) for the proposition that FCRA rights extends to independent contractors, *Ernst* said no such thing. In *Ernst*, Dish Network obtained a consumer report about a subcontractor's employee from that subcontractor. Because the report "was collected, expected to be used and actually used to evaluate Plaintiff for reassignment or retention as an employee," the court held, the consumer report *was* used for employment purposes, even though the eventual user of the report was not Ernst's direct employer. *Id.* at 384–85.[2] Thus, the FRCA's requirement of pre-adverse action notice only applies when an applicant applies to be an employee.

### C. Targeted discovery is warranted.

Mutual of Omaha's contention that Smith applied to be an independent contractor as opposed to an employee certainly has the Court's attention. After all, Smith alleged that he was attempting to be an independent contractor until Mutual of Omaha moved to dismiss, contending in that motion that the provision of the FCRA at issue here only applies to employees. If Mutual of Omaha is factually correct with respect to this allegation, there is no point in full-blown discovery, class certification proceedings, and other litigation here. The Court concludes that this is a situation that calls for discovery solely on the "independent contractor versus employee" question, with the opportunity for summary judgment motions to follow this limited discovery. Discovery on this issue shall commence immediately and be completed by January 11, 2019. Any motion for summary judgment on the issue shall be filed by January 25, 2019.

---

[2] Similarly, Smith cannot rely on *Hoke v. Retail Credit Corp.*, 521 F.2d 1079, 1082 n.7 (4th Cir. 1975) (noting in dicta that the FCRA would apply to independent contractors because courts "are not constrained to limit its application by the common-law concept of master and servant."). Nearly two decades after *Hoke*, the Supreme Court ruled in favor of a "presumption that Congress means an agency law definition for 'employee' unless it clearly indicates otherwise." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 325 (1992).

While discovery on the contractor/employee issue will prove enlightening on the merits of Smith's claim, Smith's First Amended Complaint sets forward a claim over which this Court has subject matter jurisdiction. As such, the Court **DENIES** Defendants' Motion to Dismiss.

Upon the foregoing,

**IT IS ORDERED** that Defendants Mutual of Omaha's Motion to Dismiss is **DENIED**. Discovery and motions practice shall proceed according to the text above.

**DATED** this 4th day of October, 2018.

_____
JOHN A. JARVEY, Chief Judge
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA